## Taylor *versus* Birmingham.

Where a testator devised to his sons, A. and W., his farm in fee simple, and directed that it should be divided by a line running north and south, and the choice of the purparts to be determined by agreement or lot between the devisees. After the death of the testator the devisees entered into possession and occupied it for several years as tenants in common, and during that time purchased 15 acres adjoining the same at one end, and then divided the tract by a line nearly according to that indicated in the will, determined their choice of purparts by agreement, and respectively executed and delivered each to the other a deed, conveying such part to himself and his wife. It was *held*—

1. That the deeds, made respectively to A. and W. and their wives, constituted a partition under the will, and not a purchase and sale of the land.

2. That the wife of A. was not entitled, by virtue of such deed, to the estate as survivor of her husband.

Where A. afterwards made his will in which he devised the land to his wife for her support and maintenance during widowhood, and in the event of her death or marriage, to any child or children of his born of her, and in case of her death or marriage, leaving no heirs by me, then he devised the same to his nephew, O. C. T., in fee. Before the death of A. his wife bore him a daughter who died shortly after her father A., and the widow conveyed the land and afterwards married again. It was *held*—

1. That the widow having forfeited her estate by a voluntary breach of the condition upon which she held it, it went to the remainder-man designated in the will.

2. The widow having taken under the will the portion therein given to her, it was in *lieu* of dower, and her right to dower could not be restored by a voluntary breach of her tenure.

3. The husband having died seised, her dower, if any she has in the premises, is assignable only by proceedings in the Orphans' Court.

ERROR to the District Court of *Allegheny county.*

This was an ejectment in the name of Oliver C. Taylor, by his guardian, against Joseph Birmingham, to recover a tract of land in Allegheny county, containing 98 acres and 80 perches. John Taylor, in his lifetime, was the owner of the land in dispute, and made his last will and testament on the 14th September, 1844, which, after his death, was admitted to probate on the 5th October of the same year. By this will he devised it as follows: "To my sons, Alexander and Wilson Taylor, I give and devise the tract of land on which I now live, adjoining lands of William Jackman, James Taylor, and David Dickson, containing 100 and — acres, or thereabouts, with all the improvements thereon, to be equally divided between them, by a line running north and south through the whole tract: the choice of which part each shall occupy is left to themselves, or decided by lot, as they shall think best, to them and each of them, their heirs and assigns, in fee simple for ever."

After the death of their father, Alexander and Wilson entered into possession, and farmed the land in partnership for some years.

[Taylor v. Birmingham.]

They also purchased 15 acres and 5 perches, adjoining the eastern end, from the executors of Robert Baldwin, deceased, and received a deed for it, dated 10th December, 1845. They subsequently divided the tract by a line running nearly north and south, after which each occupied the share allotted to him, Alexander taking the east and Wilson the west end of the farm: the part purchased from Baldwin was included in Alexander's part. And on the 15th January, 1850, Alexander and wife conveyed to Wilson Taylor and Sarah Ann his wife, the part allotted to Wilson, and Wilson and wife executed and delivered a deed to Alexander and Elizabeth his wife for the other purpart.

On the 22d of January, 1850, Alexander Taylor, who was then in declining health, made his will, and which contained the following provision:—

" To my beloved wife, Elizabeth, I give and bequeath the tract of land on which I now reside, containing 98 acres and 81 perches, to be hers, for her support and maintenance, so long as she remains my widow; and in the event of her death or marriage, then, in that case, it is my will that it belong and I hereby devise it to my child or children that may be born of her, should she have any by me. In case of the death of my wife Elizabeth during her widowhood, or of her marriage, leaving no heirs by me, then it is my will, and I hereby devise the aforesaid lands to my nephew, Oliver Cromwell Taylor, son of my brother, John Taylor."

Alexander died in April, and his will was proved 6th May, 1850. At the date of the will he had no children, but before his death a daughter was born, who was named Elizabeth Jane, and who died in July of the same year.

On the 4th of October, 1853, Elizabeth Taylor, the widow of Alexander, conveyed the land, by deed duly acknowledged, to Joseph Birmingham, the defendant in this action, in consideration of $350, and recites the will of John Taylor, the deed from Wilson Taylor and wife, and the will of Alexander Taylor. Under this deed the defendant went into possession. In June, 1854, Elizabeth Taylor was married to Daniel O. Bailey, in the state of Ohio, where they still continue to reside.

The plaintiff claimed the land as devisee under the will of Alexander Taylor.

The defendant claimed that under the deed from Wilson Taylor and wife to Alexander Taylor and Elizabeth his wife, the said Alexander and Elizabeth took a joint estate in fee simple, which on the death of Alexander survived to his wife, the said Elizabeth. Defendant further claimed that under the will of Alexander Taylor, his daughter was seised of the estate in fee simple, subject to the provision for life or widowhood to her mother, and that on her death her estate vested in her mother under the intestate laws; that a fee to Oliver C. Taylor could not be limited on a fee to testator's daughter.

[Taylor *v.* Birmingham.]

Defendant further claimed that on the widow's marriage there were *left* brothers and sisters of testator "*heirs by me,*" his next of kin, who would take under said will, and that plaintiff took no title; that the word *heirs* does not mean *children*, the testator using both terms properly in his will.

Defendant further claimed that in any event the widow took a fee as survivor, under said deed, of the half of the 15 acres and 5 perches of the Baldwin lands, the half which Wilson Taylor and wife had therein being conveyed, they having received no part of said land.

The court below (HAMPTON, P. J.) directed a verdict for the plaintiff, reserving the points stated. On a subsequent day, after stating the facts, he delivered the following opinion, and entered judgment on the verdict in favour of the plaintiff:—

"Two questions of primary importance in the cause are raised by this evidence.

"1st. Did Elizabeth Taylor take an estate in fee by survivorship, under the deed from Wilson and wife? If so, the plaintiff cannot recover; if not, then,

"2d. Did she do anything under the will of her husband to forfeit her right of dower in the land in controversy; and may not the defendant now under his deed from her retain the undivided third part during her life?

"Other questions were raised and discussed on the trial, but the decision, it seems to me, will dispose of the whole case.

"First, then, as to her right by survivorship. The solution of this question depends on the true character of the transactions between Wilson and Alexander, leading to and terminating in the deeds of 15th January, 1850. Regarding the form of the deed alone from Wilson and wife as a naked purchase and sale of land, there could be no doubt of her right as tenant in fee, to hold and dispose of the premises, under well considered and repeated decisions of the Supreme Court. But if these two deeds, when taken together, and in connexion with the will of John Taylor, and the facts that they first occupied the land together, and subsequently ran a line dividing the land, and each entered into the separate possession of his own part, show only a partition, and not an ordinary purchase and sale, then the mere form of the deed is to be disregarded, and the true intent and meaning of the parties are to be carried into effect by regarding the deeds merely in the light of mutual releases. And in that case the deed would confer on the wife no title by survivorship, and the plaintiff would have a right to recover at least two undivided third parts of the land in dispute.

"The true mode of ascertaining the intention of the parties to a contract, or any other transaction, is to place ourselves as nearly as possible in their situation at the time, with all the facts and cir-

[Taylor *v.* Birmingham.]

cumstances surrounding them. Such a stand-point will afford us a much clearer view than any other. Here, then, we have the two brothers holding in common, as their deeds declare, a large tract of land devised to them by their father, under specific directions how it shall be divided and held in severalty. We find them making a division of the same according to these directions, and each taking exclusive possession of his own portion—then follows the execution and delivery of mutual deeds alike in everything but the transposing of the names and the description of the property. The consideration in each is one dollar. These facts taken together clearly characterize the transaction as one of partition merely, and not an ordinary purchase and sale, so as to bring it under the rule of law, applicable to the case of survivorship by the wife.

" In overlooking the mere form of the deed, and regarding the substance of the transaction, we have the authority of the Supreme Court in Stehman *v.* Huber, 9 *Harris* 260. In delivering the opinion of the court, Mr. Justice LOWRIE says, 'When land is held in common by a married woman and others, and they all join in a partition, and her share is conveyed to her and her husband, the law looks at the character of the transaction, rather than at the form of the conveyance, in order to define her interest, and considers the share as still hers, a divided share being substituted for an undivided one. If the husband has paid money for equality of partition, and the conveyance be to the husband and wife, he acquires an interest in common with her in proportion to the amount.'

" Here, it is not pretended the wife paid any purchase-money, or owelty of partition. True, she released her right of dower in Wilson's portion, but for that her right of dower was doubled in the portion taken by her husband. Before the partition she and the wife of Wilson each had the right of dower in the whole to the extent of their husbands' interest respectively, but afterwards each was entitled to dower of the purpart set off to her husband in severalty.

" In 2 *Cruise* 261, it is said a woman shall also be endowed of an estate in common; but in such case dower shall be assessed in common; for the widow cannot have it otherwise than her husband had it.

" I am of opinion, therefore, that the widow of Alexander Taylor did not take an estate in fee by survivorship under the deed in question, and on this point the law is with the plaintiff.

" A careful examination of the will of Alexander Taylor, and the authorities cited by the plaintiff's counsel at bar, show clearly that on the death of Elizabeth Jane, his daughter, during the widowhood of the mother, the fee vested absolutely in the present plaintiff, and consequently the law is with the plaintiff on the second question reserved.

[Taylor *v.* Birmingham.]

" The fifteen acres purchased from Baldwin's executors are to be regarded in the same light as the rest of the land, and therefore the same rule of law and reasoning apply to both. These fifteen acres were thrown into the amount to be divided, and were as much the subject of partition as the other tract. This ground of defence, therefore, cannot avail the defendant. This point must be ruled in favour of the plaintiff.

" The fourth and last question reserved relates to the defendant's right to retain possession of the one undivided third part of the premises in controversy during the life of the widow, under his deed from her, by virtue of her right of dower.

" The present defendant occupies no better position than his grantor would if she had not conveyed, and the present suit were against her. Could she then successfully defend her right as tenant in dower to retain the one undivided third part of the land in controversy?

" It may not be improper here to remark that I can discover, from the evidence, no reason why the widow, or any one claiming under her by proper conveyance, should not have her dower assigned by due course of law. But that question does not necessarily arise here, and therefore we do not decide it. Granting for the present that her right of dower existed in full force at the date of her deed to Birmingham, and that it might still be enforced in her name for his use, by instituting the appropriate proceedings, we come directly to the question whether that right can avail the defendant in the present action. It is well settled, by repeated decisions in England as well as in this state, that a widow cannot maintain an action of ejectment for her dower, her remedy being either by an action of dower under certain circumstances, or by proceeding in the Orphans' Court under our Acts of Assembly: see 1 *Yeates* 424; 5 *S. & R.* 536; 10 *Id.* 326; 13 *Id.* 85; 2 *Wh.* 116; 7 *Watts* 191, and many other cases to the same point. But it may be said, although she could not recover, yet she might defend on such a title. This position would be unsound, for although a defendant in ejectment may stand upon his possession until a *prima facie* case be made out; yet when that is done, the defendant must either overturn the plaintiff's title, or show such title in himself as would enable him to recover if he were plaintiff. The reason of the rule which prevents her from recovering, as laid down in the books, is, that she is neither a joint tenant, copartner, nor tenant in common with the heirs or devisees. So that her interest or estate in the lands determines her rights and her remedies.

" The rule of law that would turn a widow out of possession of her deceased husband's lands, while her right of dower exists, may be characterized as harsh and unreasonable. We can only say in reply, with Lord Chief Justice DE GREY, in 3 *Wels.* 522,

[Taylor v. Birmingham.]

when speaking on this subject, " If the law be so, we cannot determine to the contrary upon inconvenience, or the hardships of the law." The rule has been too long settled to be modified or disregarded by the courts. The legislature alone can remedy the evil, if evil it be. There are numerous authorities on this subject, but a few only will be cited. In Evans v. Webb, 1 *Yeates* 424, it was held that a devisee might recover in ejectment against the widow without previously assessing her dower.

"Mr. Justice YEATES, in delivering the opinion of the court, says: ' On the second point it was very clear, from the books, that a woman entitled to dower cannot enter on the land of her husband until it be assigned to her, and set out either by the heir, *terre tenant*, or sheriff in severalty,' and for this doctrine he cites a number of authorities. ' If she even recovers dower of the lands, she cannot enter before execution issued.' On the most minute search we have been able to make, we cannot find any case where it is laid down that the widow may legally enter on the lands for her dower at common law. But a distinction was contended for by the defendant's counsel, that though the widow could not justify her entry against the heir or devisee, yet such heir or devisee could not recover against her, when in possession as defendant in ejectment. We can see no ground whatever for the distinction. For if she could hold adverse to the heirs or devisee without an assignment of dower, she could also maintain ejectment to recover such possession.

"In Pringle and Others v. Gaw, 5 *S. & R.* 536, DUNCAN, J., says : ' By the common law it is well established that if the widow's claim be in the nature of dower, an ejectment will not lie before assignment. She is not seised of an undivided third part with the heirs. Ejectment is a possessory action, and it is certain she cannot hold the possession against the heir, she is not seised until assignment, of an undivided third part. The widow and heir or heirs are neither tenants in common, joint tenants, nor copartners : 9 *Mass. Rep.* 13. The same doctrine is reasserted in Brown v. Adams, 2 *Whar.* 191, Jones v. Hollopeter, 10 *S. & R.* 328, Thomas v. Simpson, 3 *Barr* 68, and many other cases, which it is unnecessary to quote.'

"From the authorities it is clear the defence on this ground must fail on the whole case, therefore the law is with the plaintiff.

" Let judgment be entered on the verdict in favour of the plaintiff on all the questions reserved."

The defendant took this writ, and assigned for error that the court erred in ruling the several points stated in favour of the plaintiff.

*Woods*, for plaintiff in error.—There was no partition as directed in the will. The deeds state that it had been held by them

[Taylor *v.* Birmingham.]

as tenants in common. It was to be divided by a line running north and south, equal in quantity, and to choose or cast lots for the parts. No such division was made. They made their own arrangement, by which Alexander got 98 acres and 80 perches, including the whole of the Baldwin land, not the quantity willed to him, nor by the line designated in the will. Had these brothers a right, being the owners of this land, to make their own contracts, and make their wives parties to the deeds? The wife joining in the conveyance to Wilson was a good consideration, did the joinder of the wife in the deed import nothing? In this case it is not claimed that the widow was estopped by reason of having taken under the will, for there was nothing for her to take. The whole case rests upon the written papers. These are to be construed according to their legal meaning: Ellmaker *v.* Ellmaker, 4 *Watts* 80. The intention of the grantor is the governing principle—if that is clear on the face of the deed, no extraneous facts can be admitted to control or change it: Means *v.* The Congregation, 3 *W. & S.* 303; McClure's Heirs *v.* Douthitt, 3 *Barr* 447; S. C. 6 *Id.* 415; Johnston *v.* Hart, 6 *W. & S.* 319; Robb *v.* Beaver, 8 *Id.* 107; Clark *v.* Thompson, 2 *Jones* 275; Stuckey *v.* Keefe's Executors, 2 *Casey* 397; Martin *v.* Jackson, 3 *Casey* 504. In this last case one-third was conveyed to husband and wife, and the other two-thirds under a decree of the court, and the wife took the whole as survivor.

The case of Stehman *v.* Huber, 9 *Harris* 260, relied on by the court below, is entirely different. There the land descended to the wife under the intestate law, and the other heirs conveyed the wife's share to the husband, wife, and the *heirs of the wife.* The deed only gave him a life estate, the same as the law cast upon him. There the want of a separate acknowledgment and the disability of the wife stood in the way. Alexander Taylor was *sui juris,* and competent to make and have such a deed made. All parties under him are estopped from claiming any other estate than that conveyed by the deed: Robb *v.* Beaver, 8 *W. & S.* 111.

The deed in this case is not a deed of partition, but of conveyance. In partition there is an implied warranty, in this there is an express one: Weiser *v.* Weiser, 15 *Watts* 279; Patterson *v.* Lanning, 10 *Id.* 135; Seaton *v.* Barry, 4 *W. & S.* 185.

*Leslie* and *Hepburn,* for defendant in error.—The argument of plaintiff in error turns principally on whether the conveyances were deeds of partition between Alexander and Wilson, or of original conveyance. They must first show some title. That was under the will; each was entitled to a moiety. Neither had any interest in the share of the other, except that it was held in common. They did not alter the title, only designated the bounda-

[Taylor v. Birmingham.]

ries.    The line being fixed, what interest had Wilson in the share of Alexander ?    They were mutual releases; no title passed by the deeds.    They did not hold under the deeds, but under the will of their father, and this is fully settled in Groundie v. Northampton Water Co., 7 *Barr* 233 ; Stehman v. Huber, 9 *Harris* 260 ; Werkheiser v. Werkheiser, 3 *R.* 326.

2. The interest of the widow ceased at her marriage.    This is settled by McCullough's Appeal, 2 *J.* 197 ; 2 *W. & S.* 142 ; 10 *Barr* 75.

The freehold was vested in the widow under the will of Alexander, with concurrent remainders, limited to take effect on the happening of a contingency, with a double aspect : Lodington v. Keim, *Fearne on Rem.* 373 ; Findley v. Riddle, 3 *Binn.* 141 ; Dunwoodie v. Reed, 3 *S. & R.* 435 ; Stehman v. Stehman, 1 *Watts* 474.

The remainder was not vested but contingent, even if vested in the child before its death : then a fee was limited upon a fee, and it was an executory demise : Jessup v. Smuck, 4 *Harris* 327.

The opinion of the court was delivered by

WOODWARD, J.—We adopt so much of the opinion of the learned judge as relates to the character and effect of the conveyances between Alexander and Wilson Taylor, and their respective wives, and the construction of Alexander's will.

And the effect of this ruling is fatal to the defendant's title at all points ; for if these deeds were simply a partition by tenants in common, and vested no interest in Alexander's wife, then the whole estate passed by his will, and under that she took a life estate, subject to be defeated by her second marriage.    She held her life estate on condition of remaining unmarried ; and when she broke the condition, she forfeited the estate, and it went to the remainder-man, the plaintiff below.    And in this view of the case, her claim of dower is idle, for, taking under the will, she took what it gave her in lieu of dower, and the loss of what she took by voluntary breach of the condition of her tenure, does not restore her right of dower.

But if she did not take under her husband's will, and has her right of dower, still her alienee cannot defend his possession in virtue of it, any more than he could recover it by action.    And this he could not do, either by action of ejectment or dower, because Taylor died seised of the land, and the dower, if any exists, is to be assigned by proceedings under the Act of Assembly in the Orphans' Court, and is not recoverable by action at common law.

Either way, therefore, whether Mrs. Taylor be regarded as taking or not taking under her husband's will, it follows from the main position so well stated and defended by the court below, that the defendant had not a shadow of title, and the

Judgment is affirmed.